1

2

3

4

5

6                                    **UNITED STATES DISTRICT COURT**

7                                          **DISTRICT OF NEVADA**

8

9    LARRY EDWARD ADAMS,                    )

10                    Petitioner,           )            2:98-CV-1441-KJD-PAL
                                            )
11   vs.                                    )
                                            )            **ORDER**
12   E.K. McDANIEL, *et al.*,               )
                                            )
13                    Respondents.          )
                                            )
14   _____/

15              In this habeas corpus case under 28 U.S.C. § 2254, the respondents have filed an

16   amended motion to dismiss (docket #182) the revised second amended petition for writ of habeas

17   corpus (docket ##170/198)[1] filed by Larry Edward Adams, a Nevada prisoner sentenced to death.  As

18   the bases for their motion, respondents contend that several claims in the petition are either time-

19   barred, unexhausted (and therefore subject to dismissal pursuant to Fed. R. Civ. P. 41(b)), or barred

20   by the doctrine of procedural default.  Respondents also contend that some of Adams' claims fail to

21   establish cognizable grounds for federal habeas relief.

22        I  *Procedural History*

23              Near midnight on June 23, 1984, Adams' estranged wife, Pamela, and three year-old

24

25   _____

     [1]      The filing located at docket #170 is an incomplete image of the revised second amended petition.
26   Docket #198 contains the complete image of the pleading.  The respondents filed their motion to dismiss
     in response to a hard copy of the complete document, which was served upon them via conventional
     mail on the initial filing date – i.e., September 8, 2006.

1   daughter, Laura, were shot and killed in their home on Avondale Avenue in Las Vegas, Nevada.  In

2   the days that followed, the police questioned Adams, but were unable to connect him to the murders.

3   Shortly thereafter, Adams relocated to California.  Several months later, however, the Nevada police

4   were informed that Adams had reportedly boasted about the killings to acquaintances while living in

5   Sacramento.  Adams was arrested and charged with burglary and two counts of first degree murder

6   with use of a deadly weapon.

7           On November 6, 1986, a jury in Nevada's Eighth Judicial District Court found Adams

8   guilty on all counts.  In a separate penalty phase, the jury found three aggravating circumstances and

9   no mitigating circumstances and imposed a death sentence for each murder.  Adams appealed.  On

10   April 28, 1988, the Nevada Supreme Court entered an order dismissing Adams' appeal.

11           On March 7, 1989, with assistance of counsel, Adams filed a petition for post-

12   conviction relief in the Eighth Judicial District Court.  On December 21, 1989, the state district court

13   entered its order denying relief.  Adams appealed.  On November 28, 1990, the Nevada Supreme

14   Court affirmed the lower court's decision.

15           On April 3, 1991, Adams filed a petition for writ of habeas corpus in this court that

16   was assigned case number CV-N-91-171-ECR(PHA).  With the assistance of appointed counsel,

17   Adams conducted discovery and, on November 25, 1992, filed an amended petition containing more

18   than 30 claims for relief.  The following month, Adams filed a state petition for writ of habeas

19   corpus in the Seventh Judicial District Court.

20           On February 4, 1993, this court dismissed Adams' amended petition without

21   prejudice to allow him an opportunity to exhaust state court remedies.  On February 26, 1997, the

22   state district court entered an order dismissing Adams' state petition on procedural grounds.  Adams

23   appealed.

24           On August 10, 1998, the Nevada Supreme Court entered an order dismissing Adams'

25   appeal.  On October 7, 1998, Adams initiated the instant action by filing, *pro se*, a petition for writ of

26   habeas corpus.  After appointment of counsel, Adams engaged in prolonged investigation and

2

1  discovery, culminating in the amended petition for writ of habeas corpus that is the subject of the

2  respondents' pending amended motion to dismiss.[2]

3       II. *Timeliness*

4            The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-

5  year filing period for § 2254 habeas petitions in federal court. 28 U.S.C. § 2244(d)(1). The one-year

6  period begins to run from the latest of four possible triggering dates, with the most common being

7  the date on which the petitioner's state court conviction became final (by either the conclusion of

8  direct appellate review or the expiration of time for seeking such review). *Id.* Statutory tolling of

9  the one-year time limitation occurs while a "properly filed" state post-conviction proceeding or other

10 collateral review is pending. 28 U.S.C. § 2244(d)(2). Respondents concede that Adams filed his

11 initial petition within the one-year filing period under § 2244(d)(1). Respondents argue, however,

12 that most of Adams' habeas claims are time-barred from federal court review because Adams

13 presented them to this court for the first time in his amended petition and those claims do not "relate

14 back" to an earlier-filed petition.

15           The Supreme Court's decision in *Mayle v. Felix*, 545 U.S. 644 (2005), significantly

16 limits a habeas petitioner's ability to have newly-added claims "relate back" to the filing of an earlier

17 petition and, therefore, be considered timely under 28 U.S.C. § 2244(d). In *Mayle*, the Court held

18 that the Ninth Circuit's former relation-back standard under Federal Rule of Civil Procedure 15(c)(2)

19 (now Rule 15(c)(1)(B)),[3] which allowed an amendment to a habeas petition to "relate back" to the

20 date of the original petition "so long as the new claim stems from the habeas petitioner's trial,

21 conviction, or sentence," was too broad. *Id.* at 656-57. The Court held that an amended claim in a

22 

23 _____

    [2]    On January 17, 2006, Adams filed an amended petition that he identified in the caption as a
24 "Second Amended Petition" (docket #136). On September 8, 2006, he replaced that petition with a
   "Revised Second Amended Petition"(docket #170). Because Adams had not previously amended his
25 initial petition (docket ##2/3), these titles are misleading. Unless otherwise noted, any reference to
   Adams' "amended petition" herein refers to the pleading located at docket #170/198, i.e., the petition
26 currently pending before the court.

    [3]    Effective December 1, 2007, former Fed. R. Civ. P. 15(c)(2) was amended for stylistic purposes
   only and recodified as Fed. R. Civ. P. 15(c)(1)(B).

1  habeas petition relates back for statute of limitations purposes only if it shares a "common core of

2  operative facts" with claims contained in the original petition.  *Id.* at 663-64.  The common core of

3  operative facts must not be viewed at too high a level of generality, and an "occurrence," for the

4  purposes of Fed. R. Civ. P. 15(c), will consist of each separate set of facts that supports a ground for

5  relief.  *Id.* at 661.

6                                    1. *Mayle*'s Applicability

7            As indicated above, more than seven years elapsed between Adams' initial petition

8  herein and his amended petition.  With no indication or argument from Adams that statutory tolling

9  applies during that period, his amended petition was clearly filed beyond the one-year deadline

10  imposed by § 2244(d).[4]  Adams advances several reasons why the holding in *Mayle* should not apply

11  to the claims in his amended petition.  Among them are challenges to the holding in *Mayle* itself,

12  both as to its fairness and as to the reasoning employed by the Supreme Court.  Of course, this court

13  is powerless to deviate from a precedent of the Supreme Court.  *Hutto v. Davis*, 454 U.S. 370, 375

14  (1982).  As such, *Mayle* controls here to the extent that circumstances are not materially

15  distinguishable from those presented to the Supreme Court in that case.

16            Adams also argues that the application of *Mayle* to his case would effectively nullify

17  his right to amend his petition under Fed. R. Civ. P. 15(a) and would render nugatory the last several

18  years of litigation in this case.  In making these arguments, however, Adams fails to distinguish

19  between the right (or leave) to amend his petition and the right to have claims in the amended

20

21  [4]      Relying on 28 U.S.C. § 2244(d)(1)(D), Adams argues that the one-year period of limitation did
22  not start until October 20, 2005, the date he allegedly received the results of DNA testing.  Section
   2244(d)(1)(D) establishes as a triggering date for the one-year filing period "the date on which the
23  factual predicate of the claim or claims presented could have been discovered through the exercise of
   due diligence."  Among the reasons that § 2244(d)(1)(D) does not apply here is that the court is not
24  convinced that Adams exercised due diligence in his pursuit of DNA testing.  *See Johnson v. U.S.*, 544
   U.S. 295, 310 (2005) (recognizing that a DNA test result might trigger a new 1-year filing period under
25  28 U.S.C. § 2255, ¶ 6(4*), but only if* "the petitioner began the testing process with reasonable promptness
   once the DNA sample and testing were available").  Moreover, based on its plain wording, Section
26  2244(d)(1)(D) applies only to the particular claim or claims that are based on the "discovered" factual
   predicate.

petition "relate back" for statute of limitations purposes. The relation back provision under Rule

15(c)(1)(B), as construed in *Mayle*, does not conflict with either the right to amend under Rule 15(a)

or the long-held expectation of the court and the parties herein that Adams would be permitted to file

an amended petition. Indeed, Adams has been permitted to file his amended petition as

contemplated by Rule 15 and the court's scheduling orders. Rather than deprive Adams of the right

to amend his petition, *Mayle* merely limits Adams' ability to raise new claims that do not share a

factual nexus with those raised in his earlier petition.

        In addition, Adams contends that applying *Mayle* to this case would constitute an

abrogation of 18 U.S.C. § 3599, formerly codified as 21 U.S.C. § 848(q)(4)-(10). Section 3599

requires the appointment of qualified counsel and the provision of necessary expert and investigative

services for a habeas petitioner seeking relief from a death sentence. 21 U.S.C. § 3599(a)(2) and (b)-

(f). According to Adams, time-barring claims in his amended petition would effectively deprive him

of these statutory benefits.

        This argument would be more persuasive if this case was Adams' first stab at

obtaining federal habeas relief and the initial petition filed herein was, in fact, drafted without the

assistance of counsel. As recounted in the procedural history above, Adams first sought federal

habeas relief from his state court conviction and sentence in April of 1991. *Adams v. Godinez*, CV-

N-91-171-ECR(PHA); docket #1. In that proceeding, this court appointed attorneys Kevin M. Kelly

and Robert Walker to represent Adams. *Id.*, docket #10. In November of 1991, the court granted

counsel's requests for leave to conduct discovery and for payment for investigative and expert

services. *Id.*, docket ## 32/35/36.

        Counsel subsequently conducted discovery and employed investigators and experts in

pursuit of habeas relief for Adams. *See Id.*, docket #63, appendix to amended petition; *see also,*

docket #145 herein, exhibits Q, R, and S. After filing Adams' amended petition in this court, Kelly

filed Adams' subsequent state petition for writ of habeas corpus in the Seventh Judicial District

Court and continued to represent him throughout the duration of that proceeding, including Adams'

1    appeal in the Nevada Supreme Court.  Docket ## 178/179, exhibits 21-26.  While nominally filed

2    *pro se*, the initial petition in this case includes virtually all the claims for relief that Kelly had

3    compiled during his representation of Adams.  Docket ## 2/3.[5]

4           In light of the foregoing, Adams cannot legitimately claim that he filed his initial

5    petition herein without the assistance of counsel or the other benefits accorded by 21 U.S.C. § 3599.

6    It follows, therefore, that the application of *Mayle* to his pending amended petition does not infringe

7    upon any rights bestowed by that statute.[6]

8           The court is also not persuaded by Adams' argument that *Mayle* should not apply here

9    simply because this is a capital case.  It is beyond question that the one-year filing period imposed by

10   § 2244(d), as well as the purposes behind the statute, applies to *all* habeas cases under § 2254, with

11   no exception made for capital cases.  *See*, *e.g.*, *Rhines v. Weber*, 544 U.S. 269, 276 (2005)

12   (discussing  § 2244(d) in the context of a capital case).  Likewise, the procedural rules relied upon by

13   the Court in *Mayle* – i.e., Rules 15(c) and 81(a)(2) of the Federal Rules of Civil Procedure and Rules

14   2(c) and 11 of the Rules Governing Habeas Corpus Cases Under Section 2254 – also apply with

15   equal force in capital cases.  *See*, *e.g.*, *Woodford v. Garceau*, 538 U.S. 202, 208 (2003) (invoking

16   Fed. R. Civ. P. 81(a)(2) in the context of a capital case).  In the absence of any legal authority to

17   contrary, this court must conclude that *Mayle*'s relation-back standard applies in capital habeas cases

18   in the same manner as in noncapital cases.

19   \ \ \

20

21   [5]    Adams' initial petition herein consists of the court's form petition that Adams completed by hand
22   (docket #2) and a document filed therewith bearing the title "Petition for Writ of Habeas
     Corpus/Statement of Additional Claims" (docket #3).  While the latter is a copy of the state petition
23   Kelly filed on Adams behalf, the claims contained therein were clearly intended to be incorporated as
     part of Adams' initial petition in this case and will be treated as such by this court.

24          More than a year after filing Adams' state petition, Kelly sought to add five additional claims
     based on jury instructions used at Adams' trial.  See docket #179, exhibit 23, p. 143-45.  These claims
25   were not included in Adams' initial petition herein.

26   [6]    For the same reason, the court finds no merit to Adams' argument that his limited access to legal
     resources by virtue of being housed on death row militates against applying *Mayle* in this case.

1          2.  <u>Actual Innocence</u>

2          Adams also argues that he should be excused from the one-year limitations period

3  based on his "actual innocence."  A showing of "actual innocence" is a recognized method for a

4  petitioner to avoid procedural bars to consideration of the merits of his petition.  *See Schlup v. Delo*,

5  513 U.S. 298, 316 & n. 16 (1995).  Although the issue has not been resolved definitively by the

6  Ninth Circuit, the "actual innocence gateway" may be available to avoid dismissal of a petition that

7  otherwise would be time-barred by under § 2244(d).  *See Majoy v. Roe*, 296 F.3d 770, 776-77 (9th

8  Cir. 2002).

9          Under *Schlup*, "actual innocence" is established when, in light of all the evidence, "it

10  is more likely than not that no reasonable juror would have convicted [the petitioner]."  *Bousley v.*

11  *United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup*, 513 U.S. at 327-28).  The petitioner must

12  establish his factual innocence of the crime, and not mere legal insufficiency.  *Id.*; *Jaramillo v.*

13  *Stewart*, 340 F.3d 877, 882-83 (9th Cir. 2003).  Moreover, "[t]o be credible, [a claim of actual

14  innocence] requires petitioner to support his allegations of constitutional error with new reliable

15  evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical

16  physical evidence – that was not presented at trial."  *Schlup*, 513 U.S. at 324; *Calderon v. Thompson*,

17  523 U.S. 538, 559 (1998).  As such, a petitioner cannot meet the gateway actual-innocence standard

18  by merely alleging that there was insufficient evidence presented at trial to support a finding of guilt.

19  *See House v. Bell*,  547 U.S. 518, 126 S.Ct. 2064, 2078 (2006)

20          Adams does not identify, in his opposition to the respondents' motion to dismiss, the

21  particular facts or evidence that he is relying upon to usher him through the "actual innocence

22  gateway."  Having reviewed Adams' amended petition, the court notes a few salient theories that it

23  can only assume provide the bases for Adams' *Schlup* claim.  One such theory is that Adams has an

24  alibi.  Another is that there are other "viable suspects" who could have been involved in the murders.

25  Yet another is that DNA evidence exculpates Adams.

26          Each of these theories either relies heavily on supposition and speculation or depends

1    upon allegations that are not substantiated with reliable evidence.  For example, Adams identifies

2    Steve and Diane Martindale (friends and drug customers of the Adamses) as suspects in the murders,

3    but offers as evidence of their possible involvement little more than the facts that they owed the

4    Adamses money and that they left town abruptly after the murders.[7]  Adams' proposed theories in

5    relation to other possible suspects – identified as Richard Storch and someone named Rex (last name

6    unknown) – are similarly tenuous and lack evidentiary support.  Docket #198, p. 195.

7               As for the existence of an alibi, the record lacks any credible evidence showing that

8    Adams could not have been at the Avondale Avenue home at the time of the murders.  Based on

9    Adams' amended petition, his alibi witnesses are identified as Harold and Hope Sheats, Charles

10   Arthur, and the Martindales.[8]  Docket #198, p. 183-191.  While he was purportedly with the Sheats

11   at the Horseshoe Club (in Las Vegas) at some point during the night of June 23, 1984, Adams has

12   not produced a statement from either of them (or any other evidence) that establishes that he was still

13   with them around midnight, when the murders occurred.[9]  Charles Arthur's only apparent

14   ───────────────

15   [7]    Adams' amended petition contains more sensational allegations relating to the Martindales that
       are derived from Diane's conversation with Adams' investigator in 2004 (as recounted in a declaration
16   from Adams' counsel).  Docket #198, p. 60-61 (citing to exhibit BB (located at docket #146)).  Adams
       concedes that Diane's statements in that conversation lack factual accuracy.  *Id.*, footnote 29.  Also, the
17   court notes that Diane's account of events, as related in the 2004 interview, is inconsistent with the
       account she and Steve gave an investigator in a 1992 interview.  Docket #145, exhibit S.  Moreover,
18   in the 1992 interview, the Martindales provided a plausible explanation for their abrupt departure from
       Las Vegas near the time of the murders, that being that Adams had threatened them in relation to the
19   money they owed him.  *Id.*

20   [8]    Adams also alleges in his amended petition that a parking ticket he received near the time of the
       murders could help corroborate his alibi.  Docket #198, p. 190-91.  The parking ticket to which he refers
21   was introduced by the prosecution at trial in an effort to discredit Adams' statement to the police
       regarding his whereabouts on the night of the murders.  Docket #146, exhibit AA, p. 409.  The face of
22   the ticket apparently indicates that it was written at 4:39 a.m. the morning *before* the murders.  *Id.*, p.
       696.  Thus, in order for the ticket to corroborate Adams' alibi, Adams would need to demonstrate not
23   only that the ticket was misdated, but also that his car was illegally parked for several hours before the
       ticket was issued.

24   [9]    In an interview with Adams' investigator in 2003 (as recounted in a declaration from Adams'
25   counsel), Harold Sheats stated that he and his wife (Hope) had dinner with Adams at the Horseshoe
       Club on the night of the murders.  Harold was apparently unable, however, to vouch for Adams'
26   whereabouts at the time of the murders, reportedly stating instead that he did not believe Adams
       committed the murders because Adams was always looking for ways to financially support his family.
       Docket #146, exhibit BB.

1   contribution to Adams' alibi theory is his preliminary hearing testimony wherein he stated that he

2   received a phone call from Adams sometime between 11:00 and 11:30 p.m. on the night of the

3   murders and that, based on background noise, he assumed Adams was calling from a casino.  Docket

4   #171, exhibit JJ, p. 37-40.  As for the Martindales, Adams' amended petition asserts that Adams

5   visited them sometime around midnight on the night of the murders.  The only evidence in the record

6   supporting this contention, however, are the investigators' reports of interviews with the Martindales

7   several years after the fact.[10]  Docket #145, exhibit S; docket #146, exhibit BB.

8          Finally, Adams' amended petition contains a claim that errant DNA specimens found

9   at the crime scene do not belong to him and, therefore, constitute persuasive evidence of his actual

10  innocence.  Docket #198, p. 293-295.  However, even if DNA testing produced the results Adams

11  claims it did, he fails to establish that the collected specimens bear any relevant relationship to the

12  murders, much less establish his innocence.  For example, Adams contends that DNA from a female

13  and male source (other than Adams and Pamela) was left on cigarette butts found at the scene; but,

14  he does not indicate how the cigarette butts might be linked to the murders.  Thus, all that can be

15  gleaned from such evidence is that, at some unknown point in time, Pamela Adams had visitors in

16  her home who smoked cigarettes.  Adams' other assertions based on DNA results are similarly

17  unavailing.

18          3.  Equitable Tolling

19          Adams asserts that, even if the *Mayle* holding applies to his amended petition, he is

20  entitled to equitable tolling with respect to any claim that the court finds untimely.  The Supreme

21  Court has yet to decide whether equitable tolling is applicable to the statute of limitations imposed

22  by § 2244(d).  *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  However, the Ninth Circuit has

23  routinely held that the court may apply equitable tolling in habeas cases when "extraordinary

24

25  ————————————
    [10]     The court also takes judicial notice of fact that the Martindales' residence at the time (based on
26  the address stated in Adams' amended petition (docket #198, p. 187)) was less than a mile from where
    the murders occurred.  Thus, rather than provide an alibi, the Martindales' statements place Adams close
    to the murders, both geographically and chronologically.

1   circumstances beyond a prisoner's control make it impossible to file the petition on time." *See*, *e.g.*,

2   *Stillman v. LaMarque*, 319 F.3d 1199, 1202 (9th Cir. 2003) (quoting *Miles v. Prunty*, 187 F.3d 1104,

3   1107 (9th Cir.1999)).  Generally, a habeas petitioner seeking equitable tolling must show (1) that he

4   has been pursuing his rights diligently and (2) that some extraordinary circumstance stood in his

5   way.  *Raspberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) (citing *Pace*, 544 U.S. at 418).

6   "[T]he threshold necessary to trigger equitable tolling . . . is very high, lest the exceptions swallow

7   the rule."  *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (citation omitted).

8              Adams contends that equitable tolling should apply here due to his detrimental

9   reliance upon the more lenient "relation-back" standard in effect in this circuit prior to the Supreme

10  Court's decision in *Mayle*.  As mentioned above, *Mayle* was a reversal of the Ninth Circuit's holding

11  in *Felix v. Mayle*, 379 F.3d 612 (9th Cir. 2004) that an amendment to a habeas petition would "relate

12  back" to the date of the original petition as long as the new claim stemmed from the same trial,

13  conviction, or sentence.  379 F.3d at 614.  The problem with Adams' claim that he detrimentally

14  relied on the more lenient standard is that his habeas petition had been pending in this court for

15  nearly six years prior to the Ninth Circuit's decision in *Felix v. Mayle*.  During that time there was no

16  controlling case law in effect that would have allowed Adams to reasonably rely on the broader

17  interpretation of relation back.  Also during that time, six of the circuits took a narrow view of

18  relation back under Rule 15(c) (*see United States v. Hicks*, 283 F.3d 380, 388-389 (D.C. Cir. 2002)

19  (relevant transaction must be defined more narrowly than the trial and conviction); *United States v.*

20  *Espinoza-Saenz*, 235 F.3d 501, 503-505 (10th Cir. 2000) (same); *Davenport v. United States*, 217

21  F.3d 1341, 1344-1346 (11th Cir. 2000) (same); *United States v. Pittman*, 209 F.3d 314, 317-318 (4th

22  Cir. 2000) (same); *United States v. Duffus*, 174 F.3d 333, 337 (3rd Cir. 1999) (same); *United States v.*

23  *Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999) (same)), while only one circuit read Rule 15(c) in the

24  manner adopted by the Ninth Circuit in *Felix v. Mayle* (*see Ellzey v. United States*, 324 F.3d 521,

25  525-27 (7th Cir. 2003) (if original petition is timely filed, amendments referring to the same trial

26  conviction may relate back)).

1    As additional grounds for equitable tolling, Adams claims that he detrimentally relied

2    on orders issued by this court that contemplated or permitted the filing of an amended petition well

3    beyond the one-year limitations period.  Here again, Adams fails to recognize that permission to file

4    an amended petition did not necessarily entail the right to add entirely new claims for relief and have

5    them relate back to the initial petition.  In the absence of any showing that this court actively misled

6    him, Adams is not entitled to equitable tolling based on his reliance on the court's scheduling orders.

7    *See Brambles v. Duncan*, 412 F.3d 1066, 1070-71 (9th Cir. 2005).

8    Lastly, Adams argues his alleged mental impairments provide grounds for the

9    equitable tolling of the statute of limitations.  The faulty premise underlying this argument is that

10   Adams was without assistance of counsel in submitting his initial petition herein and in allowing the

11   limitations period to lapse.  As discussed above, Adams initial petition includes nearly all the claims

12   for relief that Adams' prior counsel, Kevin Kelly, had compiled during his lengthy representation of

13   Adams.  Moreover, Adams' current counsel appeared herein approximately six months prior to the

14   conclusion of Adams' one-year filing period.  Docket #12.

15   In summary, Adams has not demonstrated that extraordinary circumstances stood in

16   the way of the timely filing of his habeas claims.  As such, the court shall deny equitable tolling

17   without addressing whether Adams was diligent in pursuing his rights.

18   4. <u>Analysis</u>

19   Having concluded that *Mayle* applies to this case, the court shall examine the

20   contested claims to determine if they relate back to claims in Adams' timely-filed petition.  *See*

21   *Mayle*, 545 U.S. at 657.

22   GROUND II – <u>Prosecution Failed To Disclose Exculpatory Evidence</u>.  With this

23   claim, Adams contends that the prosecution failed to disclose information relating to Steve and

24   Diane Martindale, whom Adams identifies as suspects in the murders.  The claim does not share a

25   common core of operative facts with any claim or claims contained in Adams' initial petition.  And,

26   for reasons discussed elsewhere herein, the court rejects Adams arguments that Ground II is rendered

1    timely by virtue of his claim of actual innocence or by application of 28 U.S.C. § 2244(d)(1)(D).  As

2    such, the court finds that this claim does not relate back and is untimely.

3                 GROUND VI – Jury's Consideration Of Uncharged Misconduct And Bad Character

4    Evidence Violated Adams' Rights Under The Fifth, Sixth, Eighth And Fourteenth Amendments.

5                 The "occurrences" that Adams uses to support this claim are (1) a portion of the

6    prosecutor's argument in the penalty phase regarding Adams' alleged criminal history and (2) the

7    lack of adequate jury instructions as to the consideration of character evidence in the penalty phase.

8    While each of these "occurrences" are glancingly touched upon in Adams' initial petition (docket #3,

9    p. 64, 78), it cannot be said that Ground VI states a claim that is tied to the same core of operative

10   facts as claim in Adams' initial petition.  Thus, the court finds that this claim does not relate back

11   and is untimely.

12                GROUND VII – Introduction Of Uncharged Misconduct And Bad Character

13   Evidence Violated Adams' Rights Under The Fifth, Sixth, Eighth And Fourteenth Amendments.

14                GROUND VIII – Introduction Of Evidence Of Prior Bad Acts Violated Adams'

15   Rights Under The Fifth, Sixth, Eighth And Fourteenth Amendments.  To support of these claims,

16   Adams identifies several examples of testimony regarding bad acts that, according to him, violated

17   his constitutional rights.  Adams used the same examples to support a claim in his initial petition that

18   challenged the trial court's admission of the testimony.  Docket #3, p. 82-85.  Thus, the court finds

19   that these claims relate back to the timely-filed petition.

20                GROUND X – Trial Court's Admission Of Unreliable Hearsay Testimony By Tamara

21   Miller Violated Adams' Rights Under The Fifth, Sixth, Eighth And Fourteenth Amendments.  With

22   this claim, Adams challenges the trial court's decision to allow Miller to testify about statements

23   Pamela Adams made to her about a $12,000 debt owed to Pamela's father by Adams and Pamela.

24   The claim does not share a common core of operative facts with any claim or claims contained in

25   Adams' initial petition.  The court finds that this claim does not relate back and is untimely.

26                GROUND XI – Trial Court's Admission Of Unreliable Hearsay Testimony By Keri

12

1   Barr Violated Adams' Rights Under The Fifth, Sixth, Eighth And Fourteenth Amendments.  With

2   this claim, Adams challenges the admission of testimony by Keri Barr, Laura Adams' sister, that

3   Laura had said "Come, Daddy" on the night of the murders.  The same operative facts were alleged

4   in Adams' initial petition in a claim asserting that the trial court erred in not granting Adams'

5   to strike the comment.  Docket #3, p. 54-55  Thus, the court finds that this claim relates back to the

6   timely-filed petition.

7           GROUND XII – Trial Court's Failure To Allow Significant Portions Of The Trial To

8   Be Recorded Violated Adams' Rights Under The Fifth, Sixth, Eighth And Fourteenth Amendments.

9   This claim does not share a common core of operative facts with any claim or claims contained in

10  Adams' initial petition.  The court finds that this claim does not relate back and is untimely.

11          GROUND XIII – Prosecution's Late Filing Of Notice To Seek Death Penalty

12  Violated Adams' Rights Under The Fifth, Sixth, Eighth And Fourteenth Amendments.  This claim

13  does not share a common core of operative facts with any claim or claims contained in Adams'

14  initial petition.  The court finds that this claim does not relate back and is untimely.

15          GROUND XIV – Impairment Of Defense's Ability To Present To Jury Defendant's

16  True *Persona* Violated Adams' Rights Under The Fifth, Sixth, Eighth And Fourteenth Amendments.

17  With this claim, Adams alleges that during his trial he was under the influence of a mood-altering

18  drug, Xanax, which gave the jury inaccurate impressions of his true mental state and personality.

19  The claim does not share a common core of operative facts with any claim or claims contained in

20  Adams' initial petition.  The court finds that this claim does not relate back and is untimely.

21          GROUND XV – Erroneous, Misleading, and Confusing Guilt Phase Jury Instructions

22  Violated Adams' Rights Under The Fifth, Sixth, Eighth And Fourteenth Amendments.  With this

23  claim, Adams seeks relief based on the cumulative effect of the guilt phase instructions that he

24  challenges elsewhere in his amended petition.  Of the jury instructions Allen includes as the basis for

25  this claim, only one –  Instruction No.16 – was used as the factual basis of a habeas claim in his

26  initial petition.  Docket #3, p. 79.  Thus, the claim does not share a common core of operative facts

1   with a claim or claims contained in Adams' initial petition.  The court finds that this claim does not

2   relate back and is untimely.

3           GROUND XVI – <u>Trial Court's Instructions To Jury To Presume The Defendant</u>

4   <u>Innocent *Until* Found Guilty Violated Adams' Rights Under The Fifth, Sixth, Eighth And Fourteenth</u>

5   <u>Amendments</u>.  With this claim, Adams challenges Instruction No. 16 pertaining to the guilt phase of

6   his trial, which began with this sentence:  The defendant is presumed to be innocent until the

7   contrary is proved.   Docket #145, exhibit L.  Adams takes issue with the use of the word "until,"

8   arguing that it should have been replaced with the word "unless."

9           Adams' initial petition also contains a claim asserting that Instruction No. 16 was

10  constitutionally infirm.  Docket #3, p. 79.  Although the legal theory supporting the claim differs, the

11  facts in Ground XVI supporting the alleged insufficiency are of the same time and type as those

12  mentioned in the original petition.  Thus, the court finds that this claim relates back to the timely-

13  filed petition.

14          GROUND XVII – <u>Trial Court's Instruction To Jury Regarding Malice Aforethought</u>

15  <u>Violated Adams' Rights Under The Fifth, Sixth, Eighth And Fourteenth Amendments</u>.  With this

16  claim, Adams contends that jury instructions concerning "malice aforethought" – specifically,

17  Instruction Nos. 6, 7, and 8 (docket #145, exhibit L) – created a mandatory presumption that shifted

18  the burden of proof to the defense and relieved the State of its burden of proof.  The claim does not

19  share a common core of operative facts with any claim or claims contained in Adams' initial

20  petition.  The court finds that this claim does not relate back and is untimely.

21          GROUND XVIII – <u>Trial Court's Instruction To Jury Regarding Premeditation And</u>

22  <u>Deliberation Violated Adams' Rights Under The Fifth, Sixth, Eighth And Fourteenth Amendments</u>.

23  With this claim, Adams contends that jury instructions concerning premeditation and deliberation –

24  specifically, Instruction Nos. 10, 11, and 12 (docket #145, exhibit L) – as well as the omission of an

25  instruction defining deliberation, lessened the State's burden of proof with respect to elements of

26  first degree murder.  The claim does not share a common core of operative facts with any claim or

14

1    claims contained in Adams' initial petition.  The court finds that this claim does not relate back and

2    is untimely.

3            GROUND XIX – <u>Jury Instruction No. 16[11] Regarding Presumption Of Innocence</u>

4    <u>Violated Adams' Rights Under The Fifth, Sixth, Eighth And Fourteenth Amendments</u>.  With this

5    claim, Adams asserts that Instruction No. 16 defined reasonable doubt in a manner that allowed for

6    findings of guilt and  aggravating circumstances based on a degree of proof less than that required by

7    due process.  Adams' initial petition contains a claim asserting that Instruction No. 16 was

8    constitutionally infirm on similar grounds.  Docket #3, p. 79.  Thus, the court finds that this claim

9    relates back to the timely-filed petition.

10            GROUND XX – <u>Jury Instruction No. 14 Regarding Purported Flight From Police</u>

11   <u>Violated  Adams' Rights Under The Fifth, Sixth, Eighth And Fourteenth Amendments</u>.  With this

12   claim, Adams challenges Instruction No. 14 concerning the manner in which flight can be considered

13   as evidence of guilt.  The claim does not share a common core of operative facts with any claim or

14   claims contained in Adams' initial petition.  The court finds that this claim does not relate back and

15   is untimely.

16            GROUND XXI – <u>Jury Instruction Regarding Credibility Of Witnesses Violated</u>

17   <u>Adams' Rights Under The Fifth, Sixth, Eighth And Fourteenth Amendments</u>.  With this claim,

18   Adams contends that a jury instruction concerning credibility – Instruction No. 18 (docket #145,

19   exhibit L) – was phrased in such a way as to focus the jury's attention on his testimony and subject it

20   to a higher standard of credibility than the testimony of other witnesses.  The claim does not share a

21   common core of operative facts with any claim or claims contained in Adams' initial petition.  The

22   court finds that this claim does not relate back and is untimely.

23            GROUND XXII – <u>Jury Instruction Regarding Equal and Exact Justice Violated</u>

24   <u>Adams' Rights Under The Fifth, Eighth And Fourteenth Amendments</u>. With this claim, Adams

25

26   [11]     The heading for this claim in Adams' amended petition identifies the challenged claim as
     Instruction No. 28.  It is clear from the facts alleged in support of the claim that this was a typographical
     error.

contends that a jury instruction exhorting the jury to do "equal and exact justice" between the defendant and the State – Instruction No. 24 (docket #145, exhibit L) – created confusion as to the appropriate burden of proof and, for the purpose of the penalty phase, suggested that the death of the victims called for the death of the perpetrator. The claim does not share a common core of operative facts with any claim or claims contained in Adams' initial petition. The court finds that this claim does not relate back and is untimely.

GROUND XXIII – <u>The Trial Court's Instructions Concerning Murder, Cumulatively, Diminish The State's Burden Of Proof In Violation Of Adams' Rights Under The Fifth, Eighth And Fourteenth Amendments</u>. With this claim, Adams contends that, in Nevada, statutorily mandated jury instructions defining reasonable doubt, express malice, and premeditation and deliberation, fail to distinguish first degree murder from any intentional killing. The claim does not share a common core of operative facts with any claim or claims contained in Adams' initial petition. The court finds that this claim does not relate back and is untimely.

GROUND XXIV – <u>The Trial Court' Failure To Properly Instruct The Jury During Sentencing Violated Adams' Rights Under The Fifth, Sixth, Eighth And Fourteenth Amendments</u>. With this claim, Adams contends that the trial court instruction to the jury to not allow sympathy to influence its verdict – Instruction No. 20 (docket #145, exhibit L) – unconstitutionally diminished the jury's consideration of mitigating evidence in reaching a sentencing verdict. The claim does not share a common core of operative facts with any claim or claims contained in Adams' initial petition. The court finds that this claim does not relate back and is untimely.

GROUND XXV – <u>Jury's Failure To Give Full Consideration To The Relevant Mitigating Circumstance Of Adams' Lack Of Significant Criminal History Violated Adams' Rights Under The Fifth, Sixth, Eighth, And Fourteenth Amendments</u>. With this claim, Adams contends that prosecutorial misconduct, ineffective assistance of counsel, and improper jury instructions combined to prevent the jury from considering his lack of significant criminal history as a mitigating factor in sentencing. The claim does not share a common core of operative facts with any claim or claims

16

1   contained in Adams' initial petition.  The court finds that this claim does not relate back and is

2   untimely.

3                   GROUND XXVI – <u>Erroneous, Misleading, And Confusing Instructions Provided To

4   The Jury During The Guilt Phase With Respect To Alleged Aggravating Circumstances Violated

5   Adams' Rights Under The Fifth, Sixth, Eighth, And Fourteenth Amendments</u>.  This claim is

6   incomprehensible and, as such, fails to state cognizable grounds for federal habeas relief.

7   Consequently, the claim shall be dismissed; and, the question of the claim's timeliness is moot.  *See*

8   Rule 4, Rules Governing Habeas Corpus Cases Under Section 2254 (hereinafter "Habeas Corpus

9   Rules").

10                   GROUND XXVII – <u>Trial Court's Failure To Instruct Jury Death Penalty Was Not

11   Mandatory Even If Mitigating Factors Did Not Outweigh Aggravating Factors Violated Adams'

12   Rights Under The Fifth, Sixth, Eighth, And Fourteenth Amendments</u>.  With this claim, Adams

13   contends that the jury should have been instructed that, even if mitigating factors did not outweigh

14   aggravating factors, it was not necessarily required to impose the death penalty.  The trial court's

15   failure to do so, according to Adams, resulted in a violation of his constitutional rights.  The claim

16   does not share a common core of operative facts with any claims contained in Adams' initial

17   petition.  The court finds that this claim does not relate back and is untimely.

18                   GROUND XXVIII – <u>Trial Court's Failure To Instruct Jury That Unanimity Was Not

19   Required To Find Existence Of Mitigating Factor Violated Adams' Rights Under The Fifth, Sixth,

20   Eighth And Fourteenth Amendments</u>.  With this claim, Adams seeks relief under *Mills v. Maryland*,

21   486 U.S. 375 (1988), based on an allegation that the trial court failed to instruct the jury that it could

22   consider mitigating factors in its sentencing decision even if the jury was not unanimous as to the

23   existence of the mitigating factor(s).  Adams' initial petition contains essentially the same claim.

24   Docket #3, p. 82-85.  Thus, the court finds that this claim relates back to the timely-filed petition.

25                   GROUND XXIX – <u>Trial Court's Failure To Instruct Jury That Mitigating

26   Circumstances Need Not Be Proved Beyond A Reasonable Doubt Violated Adams' Rights Under

1    <u>The Fifth, Eighth And Fourteenth Amendments</u>.  With this claim, Adams claims constitutional error

2    based on the trial court's alleged failure to instruct the jury that no particular degree of proof was

3    required to find the existence of a mitigating factor.  Adams' initial petition contains essentially the

4    same claim.  Docket #3, p. 79-81.  Thus, the court finds that this claim relates back to the timely-

5    filed petition.

6            GROUND XXX – <u>Adam's Death Sentences Violate His Rights Under The Fifth,</u>

7    <u>Eighth, And Fourteenth Amendment Because The Jury Was Instructed That The Matter Of Adams'</u>

8    <u>Punishment Was Wholly Within Its Discretion</u>.  With this claim, Adams contends that the sentencing

9    discretion bestowed on the jury by the trial court's jury instructions – particularly, Instruction No. 27

10   (docket #145, exhibit L) – exceeded the breadth permitted by the Constitution.  Adams' initial

11   petition contains essentially the same claim.  Docket #3, p. 81-82.  Thus, the court finds that this

12   claim relates back to the timely-filed petition.

13           GROUND XXXI – <u>Trial Court's Failure To Specifically Instruct The Jury That An</u>

14   <u>Aggravating Circumstance (And The Absence Of Mitigating Circumstances Sufficient To Outweigh</u>

15   <u>Aggravating Circumstances) Must Be Unanimously Found Proven Beyond A Reasonable Doubt</u>

16   <u>Violated Adams' Rights Under The Fifth, Eighth And Fourteenth Amendments</u>.  Adams' initial

17   petition contains a claim that raises nearly the same challenge, at least with respect to the

18   requirement that the jury find the presence of a statutory aggravating factor beyond a reasonable

19   doubt before considering non-statutory aggravators.  Docket #3, p. 78-79.  Thus, the court finds that

20   this claim relates back to the timely-filed petition.

21           GROUND XXXII – <u>Aggravating Circumstance Was Improperly Applied In Violation</u>

22   <u>Of Adams' Rights Under The Fifth, Eighth And Fourteenth Amendments</u>.  With this claim, Adams

23   challenges the application of the aggravating circumstance under Nev. Rev. Stat. § 200.033(3) to his

24   case.  Nev. Rev. Stat. § 200.033(3) provides that an aggravating circumstance exists when "[t]he

25   murder was committed by a person who knowingly created a great risk of death to more than one

26   person by means of a weapon, device or course of action which would normally be hazardous to the

18

1  lives of more than one person."  Adams' initial petition contains a similar claim based on the same

2  operative facts.  Docket #3, p. 57-58.  Thus, the court finds that this claim relates back to the timely-

3  filed petition.

4        GROUND XXXIII – <u>Aggravating Circumstance Not Proved Beyond A Reasonable</u>

5  <u>Doubt Violated Adams' Rights Under The Fifth, Eighth And Fourteenth Amendments</u>.  With this

6  claim, Adams contends that the State did not prove the aggravating circumstance under Nev. Rev.

7  Stat. § 200.033(5) beyond a reasonable doubt.  Nev. Rev. Stat. § 200.033(5) provides that an

8  aggravating circumstance exists when "[t]he murder was committed to avoid or prevent a lawful

9  arrest or to effect an escape from custody."  Adams' initial petition contains a similar claim based on

10  the same operative facts.  Docket #3, p. 61.  Thus, the court finds that this claim relates back to the

11  timely-filed petition.

12        GROUND XXXIV – <u>Trial Court Violated Adams' Rights Under The Fifth, Eighth,</u>

13  <u>And Fourteenth Amendments By Instructing The Jury That Its Role Was To Determine Whether</u>

14  <u>Adams Was Guilty Or "Innocent</u>."  This claim does not share a common core of operative facts with

15  any claim or claims contained in Adams' initial petition.  The court finds that this claim does not

16  relate back and is untimely.

17        GROUND XXXV – <u>Trial And Review On Direct Appeal Conducted By And Before</u>

18  <u>State Judicial Officers Whose Tenure Is Not Determined By Good Behavior But By Popular Election</u>

19  <u>Violated Adams' Rights Under The Eighth And Fourteenth Amendments</u>.  This claim does not share

20  a common core of operative facts with any claim or claims contained in Adams' initial petition.  The

21  court finds that this claim does not relate back and is untimely.

22        GROUND XXXVII – <u>Execution By Lethal Injection Is Cruel And Unusual</u>

23  <u>Punishment Violating Adams' Rights Under The Eighth And Fourteenth Amendments.</u>  This claim,

24  which focuses on lethal injection, does not share a common core of operative facts with any claim or

25  claims contained in Adams' initial petition.  The court finds that this claim does not relate back and

26  is untimely.

1    GROUND XXXVIII – <u>The Death Penalty Is Cruel And Unusual Punishment</u>

2  <u>Violating Adams' Rights Under The Fifth, Eighth, And Fourteenth Amendments</u>.  This claim, which

3  is premised on evolving standards of decency, is based on the same operative facts as a claim

4  contained in Adams' initial petition.  Docket #3, p. 88-89.  Thus, the court finds that this claim

5  relates back to the timely-filed petition.

6    GROUND XXXIX – <u>Ineffective Assistance Of Counsel Violated Adams' Rights</u>

7  <u>Under The Fifth, Sixth, Eighth, And Fourteenth Amendments</u>.  In his opposition to the respondents'

8  motion to dismiss, Adams suggests that all the claims of ineffective assistance of counsel (IAC) in

9  his amended petition relate back to his initial petition because his initial petition contains IAC claims

10  that are broadly drafted so as to encompass virtually all aspects of counsel's performance.

11  Alternatively, Adams argues that, because of the comprehensive duty to investigate imposed on

12  counsel representing capital defendants, all IAC claims concerning lack of investigation should relate

13  back, especially in light of Adams' ongoing contention that his counsel conducted virtually no

14  investigation at all.  Applying the relation back rule in the manner Adams advocates would require

15  the court to ignore the reasoning behind the holding in *Mayle*.

16    In narrowing the definition of "conduct, transaction, or occurrence," for the purposes

17  of relation back in habeas cases, the Supreme Court relied, in substantial part, on the fact that Habeas

18  Corpus Rule 2(c) imposes more exacting pleading requirements on a habeas petitioner as compared

19  to a complainant in an ordinary civil proceeding.  *Mayle*, 545 U.S. at 655-56.  The holding in *Mayle*

20  presupposes that each ground for relief in a habeas petition has been "pleaded discretely" and is

21  supported by a "separate congeries of facts."  *Id*. at 661.  The Supreme Court went on to reason that

22  the one-year limitation period under 28 U.S.C. § 2244(d) would be of "slim significance" if, instead

23  of being limited to the set of facts supporting a timely-filed habeas claim, "conduct, transaction, or

24  occurrence" under Rule 15(c) was defined broadly to include the trial, conviction, or sentence under

25  attack.  *Id*. at 662.

26    By allowing the more-specific IAC claims in Adams' amended petition to relate back

20

to broad IAC claims that Adams failed to support with specific facts in his initial petition, this court would be applying Rule 15(c) in a manner implicitly rejected by the Supreme Court in *Mayle*.  In reaching this conclusion, this court notes that the IAC claims in Adams' initial petition diverge as to their level of specificity.  Some contain broad statements of ineffectiveness with little, if any, factual support (see docket #2, p. 3 and docket #3, p. 67-69), whereas, others include factual allegations that arguably establish a basis for habeas relief (see docket #3, p. 97-130).  Under *Mayle*, this court can permit relation back only to the latter.

In addition, Adams' amended claims will only relate back to those initial IAC claims if the claims allege the same type of ineffectiveness and bear upon the same subject matter.  *See United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir.2005) ("[A] petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance.").  With the foregoing principles in mind, the court finds as follows with respect the various IAC claims that respondents claim are untimely.

(3) *Failure to investigate a parking ticket that would corroborate the alibi*.  The core set of factual allegations supporting this claim are also set forth in Adams' initial petition.  Docket #3, p. 104-05.  Thus, the court finds that this claim relates back to the timely-filed petition.

(4) *Failure to argue that no evidence tied Adams to the scene and that there were other viable suspects*.  This claim does not share a common core of operative facts with any claim or claims contained in Adams' initial petition.  The court finds that this claim does not relate back and is untimely.

(5) *Failure to investigate Steve and Diane Martindale as viable suspects*.  The core set of factual allegations supporting this claim are also set forth in Adams' initial petition.  Docket #3, p. 108-10.  Thus, the court finds that this claim relates back to the timely-filed petition.

(6) *Failure to investigate the possibility of the involvement of Richard Storch in the murders*.  This claim does not share a common core of operative facts with any claim or claims

1   contained in Adams' initial petition.  The court finds that this claim does not relate back and is

2   untimely.

3               (7)  *Failure to investigate Rex LNU as an alternative suspect*.  This claim does not

4   share a common core of operative facts with any claim or claims contained in Adams' initial

5   petition.  The court finds that this claim does not relate back and is untimely.

6               (9) *Failure to adequately investigate the case*.  In this claim, Adams faults his counsel

7   for not contacting eight witnesses whom he claims to have identified as potential witnesses for the

8   defense.  This claim does not share a common core of operative facts with any claim or claims

9   contained in Adams' initial petition.  The court finds that this claim does not relate back and is

10  untimely.

11              (10) *Inadequate preparation for trial and insufficient contact with Adams*.  The core

12  set of factual allegations supporting this claim are also set forth in Adams' initial petition.  Docket

13  #3, p. 100-101.  Thus, the court finds that this claim relates back to the timely-filed petition.

14              (11)  *Failure to view the evidence in the case or independently test the physical

15  evidence*.  The core set of factual allegations supporting this claim are also set forth in Adams' initial

16  petition. Docket #3, p. 101-102.  Thus, the court finds that this claim relates back to the timely-filed

17  petition.

18              (12)  *Failure to prepare Adams to testify*.  Adams' initial petition makes a broad

19  claim that counsel was ineffective for failing to adequately prepare Adams to testify.  Docket #3, p.

20  68.  It does not set forth, however, any of the operative facts used to support the claim in Adams'

21  amended petition.  The court finds that this claim does not relate back and is untimely.

22              (13)  *Failure to file a formal motion for discovery*.  The core set of factual allegations

23  supporting this claim are also set forth in Adams' initial petition.  Docket #3, p. 101.  Thus, the court

24  finds that this claim relates back to the timely-filed petition.

25              (14)  *Failure to file any substantive motions*.  The core set of factual allegations

26  supporting this claim are also set forth in Adams' initial petition.  Docket #3, p. 105-106.  Thus, the

22

court finds that this claim relates back to the timely-filed petition.

(15) *Ineffective use of investigator*.  The core set of factual allegations supporting this claim are also set forth in Adams' initial petition.  Docket #3, p. 102-103.  Thus, the court finds that this claim relates back to the timely-filed petition.

(16) *Failure to investigate discrepancies regarding a dog barking on the night of the murders*.  In this claim, Adams faults his counsel for not presenting testimony from neighbors that a dog was barking at a later time on the night of the murders than the time testified to by Keri Barr.  This claim does not share a common core of operative facts with any claim or claims contained in Adams' initial petition.  The court finds that this claim does not relate back and is untimely.

(17) *Failure to investigate the time of death of the victims*.  The core set of factual allegations supporting this claim are also set forth in Adams' initial petition.  Docket #3, p. 107.  Thus, the court finds that this claim relates back to the timely-filed petition.

(18) *Failure to investigate when Adams shaved his beard*.  The core set of factual allegations supporting this claim are also set forth in Adams' initial petition.  Docket #3, p. 108.  Thus, the court finds that this claim relates back to the timely-filed petition.

(19) *Failure to view the State's photographs until trial*.  This claim does not share a common core of operative facts with any claim or claims contained in Adams' initial petition.  The court finds that this claim does not relate back and is untimely.

(20) *Failure question any of the forensic evidence*.  The core set of factual allegations supporting this claim are also set forth in Adams' initial petition.  Docket #3, p. 101-102.  Thus, the court finds that this claim relates back to the timely-filed petition.

(21) *Failure to follow up on the results of the atomic absorption test*.  This claim does not share a common core of operative facts with any claim or claims contained in Adams' initial petition.  The court finds that this claim does not relate back and is untimely.

(22) *Failure to object to unusual and unconstitutional* voir dire *process*.  The core set of factual allegations supporting this claim are also set forth in Adams' initial petition.  Docket #3, p.

112-113.  Thus, the court finds that this claim relates back to the timely-filed petition.

(24) *Failure to investigate Pat Fitzgerald*.  The core set of factual allegations supporting this claim are also set forth in Adams' initial petition.  Docket #3, p. 106-107.  Thus, the court finds that this claim relates back to the timely-filed petition.

(25) *Failure to investigate Left Hand Bull to attack his credibility*.  The core set of factual allegations supporting this claim are also set forth in Adams' initial petition.  Docket #3, p. 110-111.  Thus, the court finds that this claim relates back to the timely-filed petition.

(26) *Failure to move for the redaction of portions of Left Hand Bull's testimony*. This claim does not share a common core of operative facts with any claim or claims contained in Adams' initial petition.  The court finds that this claim does not relate back and is untimely.

(27) *Stipulating to the admission of nearly all of the State's case*.  This claim does not share a common core of operative facts with any claim or claims contained in Adams' initial petition.  The court finds that this claim does not relate back and is untimely.

(28) *Failure to object to leading questions*.  This claim does not share a common core of operative facts with any claim or claims contained in Adams' initial petition.  The court finds that this claim does not relate back and is untimely.

(29) *Failure to object during the prosecution's direct examination*.  This claim does not share a common core of operative facts with any claim or claims contained in Adams' initial petition.  The court finds that this claim does not relate back and is untimely.

(30) *Bringing to the jury's attention that Adams owed money to his father-in-law*. This claim does not share a common core of operative facts with any claim or claims contained in Adams' initial petition.  The court finds that this claim does not relate back and is untimely

(31) *Asking the pathologist about the powder tattooing on Laura Adams' eyeball*. This claim does not share a common core of operative facts with any claim or claims contained in Adams' initial petition.  The court finds that this claim does not relate back and is untimely.

(32) *Failure to cross-examine Keri Barr about her conversations with her*

24

*grandmother*.  This claim does not share a common core of operative facts with any claim or claims contained in Adams' initial petition.  The court finds that this claim does not relate back and is untimely.

(33)  *Objecting to the admittance of Pam Adams' letter to Adams written on the day of the murder*.  This claim does not share a common core of operative facts with any claim or claims contained in Adams' initial petition.  The court finds that this claim does not relate back and is untimely.

(34)  *Failure to address muddled testimony regarding the number of bullets, cartridges, and casings*.  This claim does not share a common core of operative facts with any claim or claims contained in Adams' initial petition.  The court finds that this claim does not relate back and is untimely.

(35)  *Failure to investigate and exploit information from Dr. Green that two different weapons were used in the commission of the murders*.   This claim does not share a common core of operative facts with any claim or claims contained in Adams' initial petition.  The court finds that this claim does not relate back and is untimely.

(36)  *Failure to effectively comment on the fact that no particular .22 caliber weapon was ever linked to the crime*.  This claim does not share a common core of operative facts with any claim or claims contained in Adams' initial petition.  The court finds that this claim does not relate back and is untimely.

(37)  *Failure to argue that certain evidence raised a reasonable doubt*.  This claim does not share a common core of operative facts with any claim or claims contained in Adams' initial petition.  The court finds that this claim does not relate back and is untimely.

(39)  *Failure to argue that reasonable doubt existed as to whether the killing of Laura was first degree murder*.  This claim does not share a common core of operative facts with any claim or claims contained in Adams' initial petition.  The court finds that this claim does not relate back and is untimely.

1    (40)  *Failure to counter prosecutor's closing argument that a stranger would not*

2  *have killed Laura to eliminate her as a witness*.  This claim does not share a common core of

3  operative facts with any claim or claims contained in Adams' initial petition.  The court finds that

4  this claim does not relate back and is untimely.

5    (41)  *Failure to point out the inaccuracy of Keri Barr's testimony*.  This claim does

6  not share a common core of operative facts with any claim or claims contained in Adams' initial

7  petition.  The court finds that this claim does not relate back and is untimely.

8    (42)  *Failure to investigate and present readily available mitigation evidence in the*

9  *penalty phase*.  The core set of factual allegations supporting this claim are also set forth in Adams'

10  initial petition.  Docket #3, p. 117-118.  Thus, the court finds that this claim relates back to the

11  timely-filed petition.

12    (43)  *Failure to argue, in the guilt and penalty phase, that Pamela Adams was*

13  *involved in drug dealing*.[12]  This claim does not share a common core of operative facts with any

14  claim or claims contained in Adams' initial petition.  The court finds that this claim does not relate

15  back and is untimely.

16    GROUND XL – Pervasive And Improper Statements Made By Prosecutor During

17  The Entire Trial Process, Including *Voir Dire*, Violated Adams' Rights Under The Fifth, Sixth,

18  Eighth, And Fourteenth Amendments.  With this claim, Adams identifies numerous examples of

19  what he claims was prosecutorial misconduct occurring in three phases of Adams' trial – *voir dire*

20  proceedings, opening argument of the guilt phase, and closing argument of the guilt phase.  None of

21  the instances of alleged prosecutorial misconduct was used to support a claim in his initial petition.

22  The court finds that this claim does not relate back and is untimely.

23    GROUND XLI  – Newly Discovered DNA Evidence Casts Into Grave Doubt The

24  Validity Of The Findings Of Guilt In Violation Of Adams' Rights Under The Fifth, Sixth, Eighth,

25

26  [12]    In what appears to be a typographical error, this claim is identified in Adams' amended petition
as number 42.  Docket #198, p. 256.

And Fourteenth Amendments. The claim does not share a common core of operative facts with any claim or claims contained in Adams' initial petition. And, for reasons discussed elsewhere herein, the court rejects Adams arguments that Ground XLI is rendered timely by virtue of his claim of actual innocence or by application of 28 U.S.C. § 2244(d)(1)(D). As such, the court finds that this claim does not relate back and is untimely.

GROUND XLII – Cumulative Errors Violated Adams' Rights Under The Fifth, Sixth, Eighth, And Fourteenth Amendments. This claim consists of an exhaustive list of the errors that allegedly occurred in the criminal proceeding against Adams, the cumulative effect of which, according to Adams, deprived the proceeding of fundamental fairness and a constitutionally reliable outcome. While a few of the individual errors were used to support claims in Adams' initial petition, the vast majority of the factual allegations are presented to this court for the first time in Adams' amended petition. The court finds that this claim does not relate back and is untimely.

GROUND XLIII – On Last Remand, State Courts Violated Adams' Rights Under The Fifth, Sixth, And Fourteenth Amendments By Dismissing Adams' Habeas Corpus Petition Without A Review Of The Complete Record. With this claim, Adams faults the Nevada courts' review of his second state habeas petition. The claim does not share a common core of operative facts with any claim or claims contained in Adams' initial petition. The court finds that this claim does not relate back and is untimely.

GROUND XLV – Adams Prejudiced By Ineffective Assistance Of State Post-Conviction Counsel. For reasons discussed below, this claim in not cognizable in a federal habeas proceeding. Accordingly, the question of the claim's timeliness is moot.

GROUND XLVI – The Aggravating Circumstance At Nev. Rev. Stat. § 200.033(5) Is Unconstitutionally Vague. The core set of factual allegations supporting this claim are also set forth in Adams' initial petition. Docket #3, p. 93-94. Thus, the court finds that this claim relates back to the timely-filed petition.

GROUND XLVII – Jury Instructions Pertaining To Mitigating Circumstances Were

27

1    Unconstitutionally Vague.  The core set of factual allegations supporting this claim are also set forth

2    in Adams' initial petition.  Docket #3, p. 95-97.  Thus, the court finds that this claim relates back to

3    the timely-filed petition.

4                  GROUND XLVIII – Adams' Convictions And Death Sentences Violate His Rights

5    Under The Fifth And Fourteenth Amendments Because Of The Erroneous Assumption That Subject

6    Matter Jurisdiction Existed In The State Courts.  This claim does not share a common core of

7    operative facts with any claim or claims contained in Adams' initial petition.  The court finds that

8    this claim does not relate back and is untimely.

9                  GROUND XLIX – Trial Court Violated Adams' Rights Under The Fifth, Sixth,

10   Eighth, And Fourteenth Amendments By Failing To Give Adequate Consideration To *Pro Se*

11   Motions For Substitution Of Counsel.  The claim does not share a common core of operative facts

12   with any claim or claims contained in Adams' initial petition.  The court finds that this claim does

13   not relate back and is untimely.

14          III.  *Exhaustion*

15          Exhaustion of state remedies is a prerequisite to a federal court's consideration of a

16   petition for a writ of habeas corpus.  28 U.S.C. §2254(b).  Respondents argue that Adams has yet to

17   exhaust state court remedies for nearly all of his habeas claims.  Respondents argue further that

18   Adams' unexhausted claims must be dismissed under Fed. R. Civ. P. 41(b) because this court's order

19   dismissing his prior federal habeas case (CV-N-91-171-ECR(PHA)) provided that, upon returning to

20   this court seeking habeas relief, Adams would be allowed to present only exhausted claims.

21          1.  Exhaustion Standards

22          To exhaust a ground for relief, a petitioner must fairly present that ground for relief to

23   the state's highest court, and must give that court the opportunity to address and resolve it.  *See*

24   *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992).  The

25   "fair presentation" requirement is satisfied when the claim has been presented to the highest state

26   court by describing the operative facts and the legal theory upon which the federal claim is based.

28

1    *See Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Batchelor v. Cupp*, 693 F.2d 859, 862 (9th Cir. 1982),

2    *cert. denied*, 463 U.S. 1212 (1983).

3              To fairly present a federal claim to the state court, the petitioner must alert the court

4    to the fact that he asserts a claim under the United States Constitution. *Hiivala v. Wood*, 195 F.3d

5    1098, 1106 (9th Cir. 1999) (citing *Duncan*, 513 U.S. at 365-66), *cert. denied*, 529 U.S. 1009 (2000).

6    The mere similarity of claims of state and federal error is insufficient to establish exhaustion.

7    *Hiivala*, 195 F.3d at 1106, (citing *Duncan*, 513 U.S. at 366); *see also Lyons v. Crawford*, 232 F.3d

8    666, 668-69 (9th Cir. 2000), *as modified by*, 247 F.3d 904 (9th Cir. 2001); *Shumway v. Payne,* 223

9    F.3d 982, 987 (9th Cir. 2000).  The petitioner must have "characterized the claims he raised in state

10   proceedings *specifically* as federal claims." *Lyons*, 232 F.3d at 670.  This is accomplished either by

11   referencing a specific provisions of the federal constitution or by citing to either a federal or state

12   case involving the legal standard for a federal constitutional violation. *See id.*; *Peterson v. Lampert*,

13   319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).  "[G]eneral appeals to broad constitutional principles,

14   such as due process, equal protection, and the right to a fair trial, are insufficient to establish

15   exhaustion." *Hiivala*, 195 F.3d at 1106, (citing *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996));

16   *see also Shumway*, 223 F.3d at 987.

17              2.  Analysis

18              Respondents contend that only a handful of the claims in Adams' amended petition

19   are exhausted – specifically, Grounds III, IX, XVII through XX, XXVIII through XXXI, XXXVI,

20   XXXVIII, XXXIX(3, 10, 13-15, 17, 18, 20, 22, 24, 25, 38), and XLIII through XLVII.  According to

21   respondents, Adams has failed to exhaust state court remedies for the remaining claims.  As

22   discussed above, several of Adams' claims are time-barred; thus, the question whether these claims

23   are exhausted is moot.  As for the other claims for which respondents argue lack of exhaustion, the

24   court finds as follows.

25              GROUND I – The Court-Conducted Voir Dire Resulted In Violations Of

26   Constitutional Guarantees Of Due Process And An Impartial Jury.  With this claim, Adams

29

comprehensively attacks the constitutionality of numerous aspects of the *voir dire* used to select his jury.  Adams argued to the Nevada Supreme Court that jury selection was plagued by constitutional violations.   Docket #179, exhibit 23, p. 59-62.  However, none of his arguments in state court approached, even remotely, the factual and legal breadth of the claim contained in Ground I.  Thus, Ground I is unexhausted.

GROUND IV – Adams' Convictions And Death Sentences Violate The Fifth, Sixth, Eighth, And Fourteenth Amendments Because The State Of Nevada Appointed One Inexperienced Lawyer To Represent Adams At Trial.  With this claim, Adams contends that the State of Nevada committed constitutional error by appointing only one inexperienced attorney to represent Adams at trial.  Because Adams focuses on the actions or omissions of the State, rather than appointed counsel, this claim differs from the ineffective assistance of counsel claims Adams presented to the Nevada Supreme Court.  This claim is unexhausted.

GROUND V – Adams' Convictions And Death Sentences Violate The Fifth, Sixth, Eighth, And Fourteenth Amendments Because Of Clark County's Policies Regarding Resource Allocation And Assignment Of Inexperienced Attorneys To Capital Cases.  This claim alleges a constitutional violation arising from the Clark County Public Defender's alleged policy of assigning counsel to defendants based on the results of polygraph examinations.  This claim was not presented to the Nevada Supreme Court in any of Adams' state court proceedings.  Thus, the claim is unexhausted.

GROUND VII – Introduction Of Uncharged Misconduct And Bad Character Evidence Violated Adams' Rights Under The Fifth, Sixth, Eighth And Fourteenth Amendments.

GROUND VIII – Introduction Of Evidence Of Prior Bad Acts Violated Adams' Rights Under The Fifth, Sixth, Eighth And Fourteenth Amendments.  Adams presented claims to the Nevada Supreme Court in which he challenged the trial court's admission of the same evidence upon which these claims are premised.  In doing so, however, he relied entirely on Nevada law.  Docket #177, exhibit 4, p. 14-15; docket #179, exhibit 23, p. 22-26.  Consequently, Adams has not "fairly

presented" to the Nevada Supreme Court the federal claims contained in Grounds VII and VIII.  *See*

*Johnson v. Zenon*,  88 F.3d 828, 830 (9th Cir. 1996) (relying upon *Duncan*, *supra*, to find claims

unexhausted where petitioner's arguments in state court had been based on state evidence law).

Grounds VII and VIII are unexhausted.

GROUND XI –  Trial Court's Admission Of Unreliable Hearsay Testimony By Keri

Barr Violated Adams' Rights Under The Fifth, Sixth, Eighth And Fourteenth Amendments.  As

noted above, this claim challenges the admission of Keri Barr's testimony regarding a statement

purportedly made by Laura Adams on the night of the murders.  Once again, Adams' argument in

state court regarding the admissibility of this testimony was premised on state evidence law.  Docket

#177, exhibit 4, p. 15-16; docket #179, exhibit 23, p. 26-27.  Thus, this Ground XI is unexhausted

for the same reason as Grounds VII and VIII.

GROUND XVI – Trial Court's Instructions To Jury To Presume The Defendant

Innocent *Until* Found Guilty Violated Adams' Rights Under The Fifth, Sixth, Eighth And Fourteenth

Amendments.  Adams argued in the Nevada Supreme Court that the jury instruction defining

reasonable doubt – i.e., Instruction No. 16 – was unconstitutional based on the U.S. Supreme Court's

holding in *Cage v. Louisiana*, 498 U.S. 39 (1990).  Docket #179, exhibit 23, p. 26-27.  While Adams

attacks the constitutionality of the same jury instruction in Ground XVI, he employs an altogether

different legal theory to do so.  As explained above, Adams contends in Ground XVI that it was

constitutional error for the instruction to have read that the defendant is presumed to be innocent

*until* (rather than unless) the contrary is proved.  Because Adams failed to advance this latter theory

in the Nevada Supreme Court, Ground XVI is unexhausted.

GROUND XXVI – Erroneous, Misleading, And Confusing Instructions Provided To

The Jury During The Guilt Phase With Respect To Alleged Aggravating Circumstances Violated

Adams' Rights Under The Fifth, Sixth, Eighth, And Fourteenth Amendments.  As noted above, this

claim shall be dismissed for failure to state cognizable grounds for federal habeas relief.

Accordingly, the court need not address whether the claim is exhausted.

GROUND XXXII – <u>Aggravating Circumstance Was Improperly Applied In Violation Of Adams' Rights Under The Fifth, Eighth And Fourteenth Amendments</u>.  As discussed above, this claim challenges the application of the aggravating circumstance under Nev. Rev. Stat. § 200.033(3) to Adams' case.  Adams raised an analogous claim in the Nevada Supreme Court.  Docket #179, exhibit 23, p. 29-30.  Viewed broadly, both the state court argument and Ground XXXII contend that insufficient evidence was presented to support Nev. Rev. Stat. § 200.033(3) as an aggravating circumstance.  The problem for Adams is that he did not cite to federal law in his argument to the Nevada Supreme Court.

It is not enough "to raise a state claim that is analogous or closely similar to a federal claim." *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir.2005).  In *Hiivala*, the court held that presentation of an "insufficient evidence" claim based on state law was insufficient to raise a federal due process claim of insufficient evidence.  195 F.3d at 1106.  Accordingly, Ground XXXII remains unexhausted.

GROUND XXXIII – <u>Aggravating Circumstance Not Proved Beyond A Reasonable Doubt Violated Adams' Rights Under The Fifth, Eighth And Fourteenth Amendments</u>.  As discussed above this claim asserts that the State did not prove the aggravating circumstance under Nev. Rev. Stat. § 200.033(5) beyond a reasonable doubt.  This claim is unexhausted for the same reason as Ground XXXII – i.e, Adams did not cite to federal law in raising a similar argument in the Nevada Supreme Court.   Docket #179, exhibit 23, p. 32.

GROUND XXXIX – <u>Ineffective Assistance Of Counsel Violated Adams' Rights Under The Fifth, Sixth, Eighth, And Fourteenth Amendments</u>.

Adams contends that his IAC claims are all exhausted based on arguments that, like his relation back arguments, ask the court to employ an analysis that takes an overly-lenient view of what constitutes exhaustion.  It is well-established that to fairly present a claim to the state courts for purposes of exhaustion, a petition must present both the legal theory and *the operative facts* supporting the claim.  *See Kelly v. Small*, 315 F.3d 1063, 1067-69 (9th Cir. 2003) (finding

1   unexhausted ineffective assistance of counsel and prosecutorial-misconduct claims where specific

2   instances of ineffectiveness and misconduct asserted in federal petition were neither in the California

3   Supreme Court petition nor discussed by the court of appeal) (overruled on other grounds).  Also,

4   new factual allegations will render a claim unexhausted if they "fundamentally alter the legal claim

5   already considered by the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986).

6           Because each subpart of Ground XXXIX involves a distinct set of operative facts, the

7   court shall separately analyze the question of exhaustion with respect to each subpart for which

8   respondents claim lack of exhaustion (excluding those claims that have been determined to be time-

9   barred, above).

10          (1) *Failure to investigate the alibi defense and properly argue it to the jury*.  Adams

11  contends that he exhausted this claim in the appeal of his first state post-conviction petition.  The

12  brief to the Nevada Supreme Court in that proceeding includes an IAC claim that alleges that

13  Adams' counsel failed to interview witnesses who could have placed Adams at "the Horseshoe

14  Club" at the time of the murders.  Docket #177, exhibit 13, p. 9-10.  The claim also includes an

15  allegation that Adams provided counsel with a list of these alibi witness, but does not identify any of

16  them.  *Id*.

17          By contrast, the allegations supporting Ground XXXIX(1) make only glancing

18  references the Horseshoe Club alibi and, instead, focus on various arguments Adams' counsel made

19  to the jury and supposed exculpatory evidence (unrelated to the Horshoe Club alibi) that counsel

20  failed to uncover.  Because the bulk and substance of these allegations were never presented to the

21  Nevada Supreme Court, Ground XXXIX(1) is unexhausted.

22          (2) *Failure investigate alibi witnesses Harold and Hope Sheets, and Tamara Miller*.

23  Adams presented this claim to the Nevada Supreme Court in the appeal of his second state post-

24  conviction petition.  Docket #179, exhibit 23, p. 73, 77.  Ground XXXIX(2) is exhausted

25          (5) *Failure to investigate Steve and Diane Martindale as viable suspects*.  Adams

26  presented this claim to the Nevada Supreme Court in the appeal of his second state post-conviction

1    petition.  Docket #179, exhibit 23, p. 78-80.  Ground XXXIX(5) is exhausted

2          (8)  *Agreeing to be sole counsel for Adams and not recognizing his own incompetence*

3    *or conflict of interest*.  Adams presented this claim to the Nevada Supreme Court in the appeal of his

4    second state post-conviction petition.  Docket #179, exhibit 23, p. 67-70.  Ground XXXIX(8) is

5    exhausted.

6          (11)  *Failure to view the evidence in the case or independently test the physical*

7    *evidence*.  Adams presented this claim to the Nevada Supreme Court in the appeal of his second state

8    post-conviction petition.  Docket #179, exhibit 23, p.71-72.  Ground XXXIX(11) is exhausted.

9          (42)  *Failure to investigate and present readily available mitigation evidence in the*

10    *penalty phase*.  Adams presented this claim to the Nevada Supreme Court in the appeal of his second

11    state post-conviction petition.  Docket #179, exhibit 23, p.86-88.  Ground XXXIX(42) is exhausted.

12          With respect to the IAC claims for which Adams has met the exhaustion requirement,

13    this court recognizes that those claims as presented herein include factual allegations and references

14    to evidence that was not placed before the state courts in Adams' post-conviction proceedings.  The

15    additional information does not "fundamentally alter" the ineffective assistance claim presented to

16    the state court.  *See Landrigan v. Schriro*, 441 F.3d 638, 648 (9th Cir. 2006), *overruled on other*

17    *grounds*, --- U.S. ----, 127 S.Ct. 1933 (2007) (citing *Vasquez*, *supra*).  In so deciding, however, the

18    court reserves judgment as to whether Adams is excused from the constraints of 28 U.S.C. §

19    2254(e)(2) in submitting evidence in this proceeding that was not presented when he exhausted his

20    state court remedies.  *See Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir. 2005).

21          3.  Treatment of unexhausted claims

22          In dismissing Adams' first habeas action, this court warned Adams that he was to be

23    permitted only one return trip to state court and that he had to present all known unexhausted

24    grounds for relief in that proceeding.  *Adams v. Godinez*, CV-N-91-171-ECR(PHA); docket #67/68.

25    In light of that mandate, respondents argue that any claim in Adams' amended petition that has yet to

26    be exhausted must be dismissed under Fed. R. Civ. P. 41(b) for failure to comply with this court's

1    orders.  While respondents' argument is supported by dictum found in *Slack v. McDaniel*, 529 U.S.

2    473, 489 (2000), the Supreme Court has since provided instruction regarding the treatment of habeas

3    petitions containing unexhausted claims.  *See Rhines v. Weber*, 544 U.S. 269 (2005)

4              Because several claims in his amended petition are unexhausted, Adams has

5    presented this court with a mixed petition (i.e., a petition containing both exhausted and unexhausted

6    claims).  As such, the petition is subject to dismissal under *Rose v. Lundy*, 455 U.S. 509 (1982).  In

7    *Rhines*, the Supreme Court held that a district court has discretion to stay a mixed petition when

8    dismissal under *Lundy* may result in claims being barred under AEDPA's one-year deadline.  544

9    U.S. at 275.  The Court also held, however, that that discretion is limited by AEDPA's twin

10   purposes: "reduc[ing] delays in the execution of state and federal criminal sentences" and

11   encouraging state "petitioners to seek relief from state courts in the first instance." *Id.* at 276 (internal

12   quotation marks omitted).  Thus, the Court concluded that, "[b]ecause granting a stay effectively

13   excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only

14   appropriate when the district court determines there was good cause for the petitioner's failure to

15   exhaust his claims first in state court." *Id*. at 277.

16             Nearly twenty years have passed since Adams' conviction became final.  As outlined

17   above, Adams has already been provided a chance to return to state court for exhaustion purposes

18   without forfeiting the opportunity for federal review of his unexhausted claims.  Adams had benefit

19   of counsel in that state court proceeding.  Moreover, in dismissing Adams' first habeas action, this

20   court notified him that he was to be permitted only one return trip to state court.  Based on the

21   history of his proceedings in both state court and this court, Adams cannot show good cause for

22   failing to exhaust the unexhausted claims contained in his current federal petition.

23             *Rhines* contains a clear statement as to the treatment of a mixed petition when a stay

24   is not warranted:

25                  . . . [I]f a petitioner presents a district court with a mixed petition and the court
                    determines that stay and abeyance is inappropriate, the court should allow the
26                  petitioner to delete the unexhausted claims and to proceed with the exhausted claims
                    if dismissal of the entire petition would unreasonably impair the petitioner's right to

35

1   obtain federal relief.  See [*Lundy*], at 520, 102 S.Ct. 1198 (plurality opinion) ("[A
2   petitioner] can always amend the petition to delete the unexhausted claims, rather
    than returning to state court to exhaust all of his claims").

3   *Rhines*, 544 U.S. at 278.  Therefore, Adams will be provided the opportunity to abandon his

4   unexhausted claims.  If he does so, this case will proceed on his remaining exhausted claims.  If he

5   does not abandon his unexhausted claims, his entire petition shall be dismissed under *Rose v. Lundy*.

6           IV.  *Procedural Default*.

7           Respondents contend that the doctrine of procedural default precludes this court from

8   considering the merits of Grounds XVII through XX, XXVIII through XXXI, XXXVI, XXXVIII,

9   XXIV(3, 10, 13-15, 17, 18, 20, 22, 24, 25, 38), XLIV, XLVI, and XLVII  in Adams' amended

10  petition.

11          1.      Procedural Default Standards

12          A federal court will not review a claim for habeas corpus relief if the decision of the

13  state court denying the claim rested on a state law ground that is independent of the federal question

14  and adequate to support the judgment.  *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991).  The

15  Court in *Coleman* stated the effect of a procedural default as follows:

16              In all cases in which a state prisoner has defaulted his federal claims in
                state court pursuant to an independent and adequate state procedural
17              rule, federal habeas review of the claims is barred unless the prisoner
                can demonstrate cause for the default and actual prejudice as a result of
18              the alleged violation of federal law, or demonstrate that failure to
                consider the claims will result in a fundamental miscarriage of justice.
19

20  *Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).  A state procedural

21  bar is "independent" if the state court explicitly invokes the procedural rule as a separate basis for its

22  decision.  *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir.1995).  A state court's decision is not

23  "independent" if the application of a state's default rule depends on a consideration of federal law.

24  *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000).  Also, if the state court's decision fails "to

25  specify which claims were barred for which reasons," the Ninth Circuit has held that the ambiguity

26  may serve to defeat the independence of the state procedural bar.  *Valerio v. Crawford*, 306 F.3d 742,

36

1    775 (9th Cir. 2002); *Koerner v. Grigas*, 328 F.3d 1039, 1050 (9th Cir. 2003).

2           A state procedural rule is "adequate" if it is "clear, consistently applied, and

3    well-established at the time of the petitioner's purported default." *Calderon v. United States Dist.*

4    *Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir.1996) (citation and internal quotation marks omitted).  In

5    *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003), the court of appeals announced a

6    burden-shifting test for analyzing adequacy.  Under *Bennett*, the State carries the initial burden of

7    adequately pleading "the existence of an independent and adequate state procedural ground as an

8    affirmative defense."  *Id.* at 586.  The burden then shifts to the petitioner "to place that defense in

9    issue," which the petitioner may do "by asserting specific factual allegations that demonstrate the

10   inadequacy of the state procedure, including citation to authority demonstrating inconsistent

11   application of the rule."  *Id.*  Assuming the petitioner has met his burden, "the ultimate burden" of

12   proving the adequacy of the state bar rests with the State, which must demonstrate "that the state

13   procedural rule has been regularly and consistently applied in habeas actions."  *Id*.

14              2.    Discussion

15           In affirming the lower court's denial of Adams' second state post-conviction petition,

16   the Nevada Supreme Court concluded that the claims in the petition were barred by Nev. Rev. Stat. §

17   34.810.  Docket #179, exhibit 26.  Under Nev. Rev. Stat. § 34.810(1)(b), a state petition for post-

18   conviction relief must be dismissed if the court determines that the issues raised in the petition could

19   have been raised in an earlier proceeding, but were not.

20           By asserting that the Nevada Supreme Court's application of § 34.810 to Adams'

21   second state petition imposes a procedural bar to this court's review of the claims mentioned above,

22   respondents have met their initial pleading burden under *Bennett* with respect to asserting procedural

23   default as an affirmative defense.  However, in light of the holding in *Valerio v. Crawford*, 306 F.3d

24   742, 778 (9th Cir. 2002), regarding the inadequacy of § 34.810, Adams has met his burden of

25   "placing the defense in issue" by simply contesting the adequacy of that rule.  *See King v. Lamarque*,

26   464 F.3d 963, 967 (9th Cir. 2006) ("Once we have found a state procedural rule to be inadequate,

1    petitioners may fulfill their burden under *Bennett* by simply challenging the adequacy of the

2    procedure.").  Accordingly, respondents must bear the "ultimate burden" under *Bennett*.

3           Rather than attempting to show that Nev. Rev. Stat. § 34.810 has been regularly and

4    consistently applied in habeas actions, respondents concede that the Ninth Circuit has determined

5    that such is not the case.  Respondents further note that they raised the issue of procedural default

6    merely to preserve the issue for appeal.  Obviously, this falls short of the showing required by

7    *Bennett*.  Because respondents have not established that Adams defaulted his federal claims in state

8    court pursuant to an "adequate" state procedural rule, federal habeas review of the claims is not

9    barred by the procedural default doctrine.

10       V.  *Cognizable Ground for Relief*

11          Having determined that Grounds XLI and XLIII are barred by the statute of

12   limitations, the court need not address respondents' arguments that the claims fail to state a

13   cognizable ground for federal habeas relief.

14          Respondents assert that Ground XLV of Adams' petition is barred under 28 U.S.C. §

15   2254(I).  In Ground XLV, Adams claims that his constitutional rights were violated because of

16   ineffective assistance of state post-conviction counsel.  Section 2254(I) explicitly provides that a

17   claim of ineffective assistance of counsel in state or federal collateral post-conviction proceedings is

18   not a ground for relief in a § 2254 proceeding.  Consequently, the claim must be dismissed.

19          **IT IS THEREFORE ORDERED** that respondent's motion to dismiss (docket #182)

20   is GRANTED in part and DENIED in part.

21          **IT IS FURTHER ORDERED** that Grounds II, VI, X, XII, XIII, XIV, XVII, XVIII,

22   XX, XXI, XXII, XXIII, XXIV, XXV, XXVI, XXVII, XXXIV, XXXV, XXXVII, XXXIX(4, 6, 7, 9,

23   12, 13, 16, 19, 21, 26-37, 39, 40, 41, 43), XL, XLI, XLII, XLIII, XLV, XLVIII, and XLIX are

24   **DISMISSED** for the reasons set forth above.

25          **IT IS FURTHER ORDERED** that petitioner shall have **twenty (20) days** from the

26   date this order is entered within which to file a Notice of Abandonment of Unexhausted Claims,

1    indicating that Grounds I, IV, V, VII, VIII, XI, XVI, XXXII, and XXXIX(1) are to be deleted from

2    his second revised amended petition (docket ##170/198).

3              **IT IS FURTHER ORDERED** that, if petitioner does not abandon his unexhausted

4    claims within the time allowed, the second revised amended petition (docket ##170/198) shall be

5    dismissed under *Rose v. Lundy*, 455 U.S. 509 (1982).

6              **IT IS FURTHER ORDERED** that, if petitioner abandons his unexhausted claims

7    within the time allowed, respondents shall have **sixty (60) days** from the date the Notice of

8    Abandonment is filed within which to file an Answer to the remaining claims in the second revised

9    amended petition (docket ##170/198).

10             **IT IS FURTHER ORDERED** that respondents' motion to dismiss revised second

11   amended petition (docket #176) is DENIED as moot.

12             **IT IS FURTHER ORDERED** that, in all other respects, the schedule set forth in the

13   scheduling order entered on May 25, 1999 (docket #21), shall remain in effect.

14             DATED:  March 25, 2008.

15

16

17

18   _____

     UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

39